1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8

9

ROBERT LEE WHITESELL, JR.,            )
10                                              )
                    Petitioner,            )          2:09-cv-2172-PMP-NJK
11                                              )
vs.                                          )          **ORDER**
12                                              )
BRIAN WILLIAMS, *et al.*,              )
13                                              )
                    Respondents.          )
14    _____/

15

16          This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254,

by a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.
17
**I. Procedural History**
18
          On April 25, 2002, the Eighth Judicial District Court for the State of Nevada entered a
19
judgment of conviction against petitioner.  (Exhibit 51).[1]  Pursuant to a jury verdict of guilt,
20
petitioner was convicted of Count 1 (burglary), Count 2 (robbery with use of a deadly weapon,
21
victim 65 years of age or older, Count 3 (murder with the use of a deadly weapon, victim 65 years of
22
age or older), and Count 4 (possession of stolen property).  (Exhibit 51).  Petitioner was sentenced to
23
the following: Count 1, 22-96 months; Count 2, 35-156 months with an equal and consecutive term
24
of 35-156 months for the use of a deadly weapon and victim 65 years of age or older; Count 3, life
25

26
          _____
               [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 16-20.

without the possibility of parole with an equal and consecutive term of life without the possibility of

parole for the use of a deadly weapon and victim 65 years of age or older; and Count 4, 12 to 48

months. (Exhibit 51). Counts 1 through 4 were imposed concurrent to one another. (*Id.*).

On May 14, 2002, petitioner filed a notice of appeal from the conviction. (Exhibit 52). On

February 11, 2004, the Nevada Supreme Court affirmed petitioner's conviction. (Exhibit 57).

Remittitur issued on March 9, 2004. (Exhibit 60).

On December 17, 2004, petitioner filed a *pro per* post-conviction habeas petition in state

court. (Exhibit 62). On December 6, 2005, a stipulation and order was entered, allowing counsel to

file a supplemental petition. (Exhibit 79). The supplemental petition was filed on December 23,

2005. (Exhibit 80). On July 7, 2006, counsel filed a supplement to the supplemental post-

conviction petition. (Exhibit 87). An evidentiary hearing was held on July 7, 2006. (Exhibit 88).

The evidentiary hearing was continued to August 14, 2006. (Exhibit 89). On September 1, 2006,

petitioner filed a post-hearing brief on his supplemental petition. (Exhibit 92). Supplemental

exhibits were filed on September 28, 2006. (Exhibit 94). On November 13, 2006, petitioner filed

supplemental authority in support of his post-conviction petition. (Exhibit 95). On December 28,

2006, petitioner filed additional supplemental authority in support of his post-conviction claims.

(Exhibit 98).

On March 9, 2007, the state district court held a hearing on the post-conviction habeas

petition. (Exhibit 104). At the hearing, the court vacated petitioner's conviction for possession of

stolen property because it was a lesser-included offense to robbery. (Exhibit 104, at pp. 7-8). On

April 5, 2007, the state district court issued findings of fact, conclusions of law, and order, denying

the habeas petition on all other grounds. (Exhibit 105). Petitioner filed a notice of appeal on April

10, 2007. (Exhibit 107). On April 12, 2007, the state district court filed a second findings of fact,

conclusions of law, and order. (Exhibit 108). An amended notice of appeal was filed on April 20,

2007. (Exhibit 112).

1    Petitioner filed his opening brief in the Nevada Supreme Court on July 13, 2007.  (Exhibit

2  117).  On November 3, 2009, the Nevada Supreme Court issued its order of affirmance.  (Exhibit

3  133).  Remittitur was issued on December 1, 2009.  (Exhibit 134).

4    This Court received petitioner's *pro se* federal habeas petition on November 12, 2009.  (ECF

5  No. 1-1).  The petition contains eleven grounds for relief.  (ECF No. 7).  Respondents filed a motion

6  to dismiss, asserting that Grounds One and Nine were unexhausted.  (ECF No. 15).  On January 20,

7  2011, this Court entered an order denying the motion to dismiss and directing respondents to file an

8  answer to the petition.  (ECF No. 26).  Respondents have filed an answer.  (ECF No. 29).  Petitioner

9  has filed a reply.  (ECF No. 33).  The Court now turns to the merits of the petition.

10  **II. Federal Habeas Corpus Standards**

11    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

12  provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams,* 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams,* 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Discussion**

**A. Ground One**

In Ground One, petitioner claims the following that his Sixth Amendment right to confrontation was violated because he was denied the right to a full and fair cross-examination of a witness. Petitioner claims that the State did not meet the standard for showing that police informant Stephen Patzig was unavailable at the time of trial. Petitioner also asserts that appellate counsel was ineffective for failing to file a writ of certiorari after the *Crawford* decision was issued. (Petition, ECF No. 7, at p. 3).

4

1          **1. Unavailability of Witness**

2          In Ground One, petitioner alleges fault in the prosecution's use of a witness' preliminary

3  hearing testimony when that witness became unavailable for trial.  Petitioner contends that the State

4  failed to meet the standard for showing the unavailability of a witness before allowing the

5  introduction of witness Patzig's preliminary hearing testimony.  (ECF No. 7, at p. 3).  The Nevada

6  Supreme Court rejected this claim on direct appeal, as follows:

> Whitesell next claims that the district court erred by admitting Patzig's preliminary hearing testimony into evidence at trial when the State could not locate him to testify at trial.  Under Nevada law, a witness's preliminary hearing testimony "may be received in evidence at the trial if three preconditions exist: first, that the defendant was represented by counsel at the preliminary hearing; second, that counsel cross-examined the witness; third, that the witness is shown to be actually unavailable at the time of trial."  Whitesell argues that the second and third factors were not met in this case.  We disagree.
>
> Whitesell argues that the second factor was not satisfied because his counsel could not adequately cross-examine Patzig during the preliminary hearing.  Whitesell makes a bald allegation that the district court limited the scope and conditions of Patzig's preliminary hearing cross-examination.  However, the only limit he identifies was on the use of Patzig's name.  But Whitesell fails to show how the inability to use Patzig's name during the preliminary hearing could limit an adequate cross-examination.  Whitesell had the opportunity to cross-examine Patzig at the preliminary hearing and did cross-examine Patzig at the preliminary hearing.  We conclude that the second factor was met in this case.
>
> Whitesell claims that the State failed to satisfy the third factor – that Patzig was unavailable.  Specifically, Whitesell argues that the State failed to demonstrate that Patzig was "beyond the jurisdiction of the court to compel appearance" under NRS 51.055(1)(d).  We conclude that this claim lacks merit.  As we explained in Funches v. State, the district court may look to the provisions of NRS 171.198(6)(b), NRS 51.055, "and the more general provisions of the evidence code when determining a witness's unavailability."  The State need only demonstrate that the witness is unavailable under one of those provisions, not all of them.  Here, the record reflects that the State tried, yet failed to locate Patzig's whereabouts.  Therefore, under NRS 171.198(6), Patzig was unavailable for trial because "his personal attendance [could not] be had in court."  Accordingly, we conclude that the district court correctly admitted Patzig's prior testimony.

5

1    (Exhibit 57, at pp. 3-4) (footnotes omitted).

2           To the extent that petitioner claims that his right to cross-examination was violated by the

3    introduction of Patzig's preliminary hearing testimony, the Nevada Supreme Court found this claim

4    to be procedurally barred by NRS 34.810(1).  (Exhibit 133, at p. 5).  The Nevada Supreme Court

5    further held as follows:

6                   Appellant first argues that the district court erred in admitting the
                    preliminary hearing testimony of Stephen Patzig at trial, in violation of
7                   his Sixth Amendment rights pursuant to Crawford v. Washington, 541
                    U.S. 36 (2004).  Appellant argues that he had good cause to raise this
8                   claim because Crawford was decided shortly before his conviction was
                    final.  Even assuming that appellant had good cause, we conclude
9                   appellant failed to demonstrate prejudice because the district court did
                    not err in admitting Patzig's preliminary hearing testimony.
10
                    In Crawford, the United States Supreme Court determined that the
11                  Confrontation Clause bars the use of a testimonial statement by a
                    witness not testifying at trial unless the witness is unavailable and the
12                  defendant had a prior opportunity for cross-examination.  541 U.S. 36,
                    53-54 (2006); see also Medina v. State, 122 Nev. 346, 354, 143 P.3d
13                  471, 476 (2006).  Recently, in Chavez v. State, this court concluded
                    that the preliminary hearing testimony of an unavailable witness may
14                  be admitted under Crawford, so long as the defendant received an
                    opportunity for effective cross-examination at the preliminary hearing.
15                  125 Nev. ___, ___, 213 P.3d 476, 486 (2009).  This court determines
                    whether the opportunity for cross-examination was adequate on a case-
16                  by-case basis and considers factors such as the extent of discovery
                    available to the defendant at the time of the cross-examination, and
17                  whether the magistrate judge allowed the defendant an opportunity to
                    thoroughly cross-examine the witness.
18
                    In this case, Patzig was unavailable to testify at trial.  At the
19                  preliminary hearing, counsel for appellant and counsel for his co-
                    defendant both thoroughly cross-examined Patzig.  Appellant's
20                  counsel had access to the transcript of Patzig's previous interview with
                    police detectives and cross-examined Patzig specifically regarding his
21                  motivations for testifying and statements he made to detectives
                    regarding his parole status.  The justice court placed no limitations on
22                  the scope of defense counsel's cross-examination.  Based on these
                    factors, we conclude that appellant received an adequate opportunity
23                  to cross-examine Patzig at the preliminary hearing.  Accordingly,
                    because Patzig was unavailable at trial, the district court did not err in
24                  admitting Patzig's preliminary hearing testimony.  Therefore, because
                    appellant failed to demonstrate actual prejudice, this claim was barred
25                  by NRS 34.810(1)(b).

26
                                            6

1    (Exhibit 133, at pp. 3-6) (footnotes omitted).  The factual findings of the state court are presumed

2    correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada

3    Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

4    established federal law, as determined by the United States Supreme Court, or that the ruling was

5    based on an unreasonable determination of the facts in light of the evidence presented in the state

6    court proceeding.  This Court denies habeas relief on this ground of the federal petition.

7    **2. Ineffective Assistance of Counsel**

8    Petitioner claims that appellate counsel was ineffective when he failed to, on direct appeal,

9    file a claim under *Crawford v. Washington*, 541 U.S. 36 (2004).  (ECF No. 7, at p. 3).

10    Ineffective assistance of counsel claims are governed by the two-part test announced in

11    *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

12    petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

13    attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

14    Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

15    *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

16    ineffectiveness, the defendant must show that counsel's representation fell below an objective

17    standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

18    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

19    would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

20    confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

21    "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

22    order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

23    burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

24    *Id.*

25

26

7

1    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

2    performance of counsel resulting in prejudice, "with performance being measured against an

3    'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

4    *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

5    ineffective assistance claim, a federal habeas court may only grant relief if that decision was

6    contrary to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,*

7    540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide

8    range of reasonable professional assistance.  *Id.*

9    The United States Supreme Court has described federal review of a state supreme court's

10   decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v.*

11   *Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113,

12   129 S.Ct. 1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We

13   take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of

14   § 2254(d).'"  *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an

15   ineffective assistance of counsel claim is limited to the record before the state court that adjudicated

16   the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.  The United States Supreme

17   Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding

18   claims of ineffective assistance of counsel:

19           Establishing that a state court's application of *Strickland* was
             unreasonable under § 2254(d) is all the more difficult.  The standards
20           created by *Strickland* and § 2254(d) are both "highly deferential," *id.*
             at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117
21           S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
             tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at
22           1420.  The *Strickland* standard is a general one, so the range of
             reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at
23           1420.  Federal habeas courts must guard against the danger of equating
             unreasonableness under *Strickland* with unreasonableness under §
24           2254(d).  When § 2254(d) applies, the question is whether there is any
             reasonable argument that counsel satisfied *Strickland's* deferential
25           standard.

26

8

1    *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).

2            The *Strickland* standard also applies to claims of ineffective appellate counsel.  *Smith v.*

3    *Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-

4    frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  To state a

5    claim of ineffective assistance of appellate counsel, a petitioner must demonstrate: (1) that counsel's

6    performance was deficient in that it fell below an objective standard of reasonableness, and (2) that

7    the resulting prejudice was such that the omitted issue would have a reasonable probability of

8    success on appeal.  *Id.*  "Experienced advocates since time beyond memory have emphasized the

9    importance of winnowing out weaker arguments on appeal and focusing on one central issue if

10   possible, or at most on a few key issues."  *Id*. at 751-52.  Petitioner must show that his counsel

11   unreasonably failed to discover and file nonfrivolous issues.  *Delgado v. Lewis*, 223 F.3d 976, 980

12   (9th Cir. 2000).  It is inappropriate to focus on what could have been done rather than focusing on the

13   reasonableness of what counsel did.  *Williams v. Woodford*, 384 F.3d 567. 616 (9th Cir. 2004)

14   (citation omitted).

15           In the instant case, petitioner claims that appellate counsel was ineffective for failing to raise

16   a claim under *Crawford v. Washington*, 541 U.S. 36 (2004), on direct appeal.  The Nevada Supreme

17   Court rejected this claim, as follows:

18                   To the extent appellant also argues that trial and appellate counsel
                     were ineffective for failing to argue that admission of Patzig's
19                   preliminary hearing testimony violated appellant's confrontation
                     rights, appellant fails to demonstrate that he was prejudiced by
20                   counsel's actions.  Given this court's conclusion that Patzig's
                     testimony was properly admitted, appellant cannot demonstrate any
21                   reasonable probability of a different result had trial counsel objected to
                     Patzig's testimony, or had appellate counsel raised the issue on direct
22                   appeal.  Therefore, the district court did not err in denying this claim.

23   (Exhibit 133, at pp. 5-6).  The factual findings of the state court are presumed correct.  28 U.S.C. §

24   2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

25   *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 5-6).  Counsel was not

26

9

ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

Court's ruling was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the United States Supreme Court, or that the ruling was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  This Court denies habeas relief on the entirety of Ground One of the federal petition.

**B.  Ground Two**

Petitioner claims that: (1) trial counsel was ineffective for failing to object to the State's

improper Information; (2) trial counsel was ineffective for failing to request a limiting jury

instruction; and (3) appellate counsel was ineffective for failing to raise the issue of the improper

Information on direct appeal.  (ECF No. 7, at p. 5).  The Nevada Supreme Court rejected petitioner's

arguments and held as follows:

> Appellant next argues that trial and appellate counsel were ineffective
> for failing to object to the information and jury instructions at trial,
> and for failing to argue on appeal that the jury instructions and
> information was defective.  Specifically, appellant argues that the
> State's information and the jury instructions at trial failed to allege the
> specific intent necessary to convict him of first-degree murder, in
> violation of <u>Sharma v. State</u>, 118 Nev. 648, 652-58, 56 P.3d 868, 870-
> 74 (2002) (concluding that to convict a defendant of a specific intent
> crime pursuant to an aiding and abetting theory, the jury must be
> instructed that the defendant aided and abetted with the intent to
> commit the underlying crime), and <u>Bolden v. State</u>, 121 Nev. 908, 921,
> 124 P.3d 191, 200 (2005) (concluding that a defendant cannot be
> found guilty of specific intent crimes on the basis that commission of
> those offenses was a natural and probable consequence of a
> conspiracy, but rather it must be proven that the defendant participated
> in the conspiracy with the intent to commit those crimes).  Appellant
> fails to demonstrate that he was prejudiced.
>
> The jury instructions read to the jury in this case included three
> separate alternative theories of liability for first-degree murder: (1)
> premeditation; (2) felony murder; (3) vicarious liability by either
> aiding or abetting or that the act was the natural and probable
> consequence of a conspiracy.  The jury instructions related to aider-
> abettor and conspiracy liability did not require the jury to find that
> appellant had aided or abetted or participated in the conspiracy with
> the intent to commit murder.  Therefore, the jury instructions did not

10

comply with the dictates of <u>Sharma</u> or <u>Bolden</u>.  However, in addition to first-degree murder, the jury also found appellant guilty beyond a reasonable doubt of burglary and robbery.  As provided by NRS 200.030(1)(b), murder in the first-degree includes any murder "[c]ommitted in the perpetration or attempted perpetration of . . . robbery [or] burglary."  Thus, as the victim died in the perpetration of the burglary and robbery, appellant was clearly guilty of felony murder pursuant to NRS 200.030(1)(b).  Accordingly, any errors in the jury instructions related to vicarious liability were harmless beyond a reasonable doubt pursuant to <u>Cortinas v. State</u>, 124 Nev. ___, 195 P.3d 315, 324 (2008) (noting that if a jury does not receive the appropriate instruction regarding specific intent, a defendant's conviction must be reversed unless the district court's failure to instruct the jury was harmless beyond a reasonable doubt).

Because the failure to include a specific intent instruction with respect to vicarious liability was harmless, appellant cannot demonstrate a reasonable probability the result of the trial would have been different had the jury been correctly instructed on vicarious liability and specific intent.  Similarly, appellant cannot demonstrate that this issue had any reasonable probability of success on appeal.  Therefore, the district court did not err in denying this claim.

(Exhibit 133, at pp. 6-7) (footnotes omitted).  The factual findings of the state court are presumed

correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal

standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 6-7).  Counsel

was not ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___,

131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada

Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court, or that the ruling was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  This Court denies habeas relief on Ground Two of the federal petition.

### C.  Ground Three

Petitioner claims that trial counsel was ineffective for failing to present in his pretrial motion

specific facts related to an alleged violation of *Massiah v. United States*, 377 U.S. 201 (1964).

Petitioner also claims that trial counsel was ineffective for failing to object during the preliminary

11

1   hearing to information provided by witness Patzig where that information went beyond information

2   initially given to police.  (ECF No. 7, at p. 7).

3          On direct appeal, petitioner claimed that the district court erred in denying his motion to

4   suppress Patzig's testimony.  The Nevada Supreme Court rejected the claim, as follows:

> Appellant Robert Whitesell first claims that the district court erred in
> denying his motion to dismiss on the basis that his alleged admissions
> to a cellmate, Stephen Patzig, were obtained in violation of Whitesell's
> constitutional rights.  We disagree.
>
> In Massiah v. United States, [377 U.S. 210 (1964)], the United States
> Supreme Court held that it was a violation of the defendant's Sixth
> Amendment rights to use the defendant's statements to his co-
> defendant after the defendant had been indicted but released on bail,
> where the defendant's retained counsel was not present and the co-
> defendant was working as a government agent.  Similarly, in Holyfield
> v. State, [101 Nev. 793, 798-804, 711 P.2d 834, 837-41 (1985)], this
> court criticized the practice of government agents entering into an
> agreement with an inmate, where, in exchange for assistance with the
> inmate's charges, the inmate is placed in the cell of a defendant for the
> purpose of gathering information from the unsuspecting defendant for
> use by the government against the defendant.  This court concluded
> that such situations are the "functional equivalent" of police
> questioning, and, thus, the requirements of Miranda v. Arizona, [384
> U.S. 436, 444 (1966)], must be met before the defendant's statements
> may be used against him.  However, for there to have been a violation
> of Whitesell's rights under Massiah and Holyfield, there must have
> been a deliberate elicitation of information by a government agent.  As
> we explained in Thompson v. State, 105 Nev 151, 156, 771 P.2d 592,
> 596 (1989):
>
>> [W]hen a jailhouse informant elicits incriminating
>> information from an accused while acting on his own
>> initiative and not pursuant to any specific prior
>> agreement with law enforcement, the incriminating
>> statements may be received in evidence against the
>> accused without violating his state or federal
>> constitutional rights.  An inmate should not be immune
>> from the consequences of his voluntary loose talk to
>> another inmate who does not represent a police
>> presence.
>
> Here, a thorough review of the record shows no evidence that Patzig
> acted as a government agent.  Patzig did not have any prior agreement
> with law enforcement when Whitesell made his incriminating
> statements.  Also, Patzig acted on his own initiative when informing
> the authorities of Whitesell's admissions.  The mere fact that Patzig

12

1
2
3

had previously acted as an informant in an unrelated case years earlier does not make him an agent for law enforcement in the instant case. Therefore, there is no violation of Whitesell's rights under Massiah and Holyfield.

(Exhibit 57, at pp. 1-3) (footnotes omitted).

Regarding the claim of ineffective assistance of counsel, the Nevada Supreme Court held:

Next, appellant argues that trial counsel was ineffective for failing to investigate a "possible" violation of Brady v. Maryland, 373 U.S. 83 (1963) and for failing to present a "complete" motion regarding a potential violation of Massiah v. United States, 377 U.S. 201 (1964). Appellant further argues that appellate counsel as ineffective for failing to present a "comprehensive" argument regarding the Massiah violation on appeal. Each of these claims center around appellant's allegations that witness Stephen Patzig was working as a police informant, and that he intentionally elicited incriminating statements from appellant in his capacity as a police informant. For the reasons discussed below, we conclude that each of these claims lacks merit.

* * *

Appellant next claims that trial counsel was ineffective for failing to file a "complete" motion to dismiss for prosecutorial misconduct pursuant to Massiah v. United States, 377 U.S. 201 (1964). Appellant also argues that appellate counsel did not adequately brief the Massiah issue on direct appeal. We conclude that appellant fails to demonstrate that trial or appellate counsel were deficient, or that he was prejudiced.

In Massiah, the United States Supreme Court concluded that it was a violation of a defendant's Sixth Amendment right to admit at trial a defendant's statements to his co-defendant after the defendant had been indicted, and his co-defendant had agreed to work covertly as a government agent. Id. at 203-204. Thus, a Massiah violation has two separate components: (1) that a defendant's statements are deliberately elicited (2) by a government agent. Id. at 206.

Appellant argues that the State violated the dictates of Massiah when it elicited testimony from Patzig at the preliminary hearing regarding appellant's statements to him. Trial counsel filed a motion to dismiss pursuant to Massiah and appellate counsel briefed the issue on direct appeal. Nonetheless, appellant argues that trial and appellate counsel failed to discuss the issue with sufficient detail. Specifically, appellant argues that while Patzig may not have acted as a government agent prior to his February 28, 2001 interview with the police, following that interview, Patzig believed himself to be a police agent. Accordingly, appellant argues that any statements the defendant made to Patzig after February 28, 2001 were obtained in violation Massiah and wrongfully admitted at the preliminary hearing.

13

1

2

3

4

5

6

7

8

9

10

11

12

> Despite appellant's allegations, appellant fails to present any additional evidence to suggest that Patzig was working as a government agent.  Beyond suggestions that Patzig himself believed that he might have a relationship with the police, no evidence presented suggests that the police or the State had any type of agreement with Patzig.  Patzig's own unsupported belief that he might gain some kind of benefit by cooperating with the police is insufficient to establish that he acted as a government agent.  <u>See</u> <u>United States v. Taylor</u>, 800 F.2d 1012, 1016 (10th Cir. 1986) (concluding that in the absence of any express or implied "<u>quid pro quo</u>" agreement between an informant and the State, or any instructions or directions by the State, the informant was not a government agent, even if he had deliberately elicited statements from the defendant in hopes of getting preferential treatment in his own case).  In addition, this court has already concluded on direct appeal that Patzig was not a government agent.  This conclusion is law of the case and may not be revisited by way of a more detailed or more precisely focused argument.  <u>See</u> <u>Hall v. State</u>, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).  Accordingly, as Patzig was not acting as a government agent, appellant cannot demonstrate a reasonable probability of a different result had trial or appellant counsel presented a more extensive argument regarding any potential <u>Massiah</u> violation.  Therefore, the district court did not err in denying this claim.

13   (Exhibit 133, at pp. 7-11) (footnotes omitted).  The factual findings of the state court are presumed

14   correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal

15   standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 7-11).  Counsel

16   was not ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___,

17   131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada

18   Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

19   established federal law, as determined by the United States Supreme Court, or that the ruling was

20   based on an unreasonable determination of the facts in light of the evidence presented in the state

21   court proceeding.  This Court denies habeas relief on Ground Three of the federal petition.

22      **D.  Ground Four**

23      Petitioner claims that trial counsel was ineffective for failing to conduct an adequate

24   investigation into his alleged alibi.  Plaintiff also claims that trial counsel was ineffective for failing

25

26

1   to obtain a photograph of petitioner from the time period of the crime.  (ECF No. 7, at p. 9).

2   Regarding these claims, the Nevada Supreme Court ruled as follows:

> Next, appellant argues that trial counsel was ineffective for failing to
> investigate appellant's claims that he had alibi witnesses.  Appellant
> specifically argues that counsel was ineffective for failing to locate a
> friend of his, Lauri Strum, with whom he was doing laundry on the
> day of the murder, and the bartender at the New Montana Bar, who
> would have testified that appellant was also in the bar on the day of the
> murder.  Appellant fails to demonstrate that counsel was deficient or
> that he was prejudiced.  A petitioner asserting a claim that his counsel
> did not conduct a sufficient investigation bears the burden of showing
> that he would have benefitted from a more thorough investigation.
> Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004).  At the
> evidentiary hearing, trial counsel testified that he attempted to locate
> the bartender, but the bar had been torn down.  He further testified that
> he visited the trailer park where Strum lived, but was unable to
> locate her.  While appellant argues that counsel was ineffective for
> failing to also search jail and prison records for Lori Strum, he fails to
> demonstrate that such an effort would have actually succeeded in
> locating her.  Appellant does not suggest how trial counsel should
> have attempted to locate the unnamed bartender.  Notably, post-
> conviction counsel did not present testimony from either potential
> witness at the evidentiary hearing.  Given the other overwhelming
> evidence presented against appellant, including his own confession to
> Patzig, appellant fails to demonstrate a reasonable probability that the
> result of the trial would have been different had trial counsel located
> Strum or the bartender.  Therefore, the district court did not err in
> denying this claim.
>
> Next, appellant argues that trial counsel was ineffective for failing to
> present contemporaneous photographs of appellant at trial.  Appellant
> argues this photograph was necessary to impeach an eyewitness who
> saw appellant leaving the crime scene, who originally told the police
> that appellant was short, Hispanic, and husky.  Appellant fails to
> demonstrate that counsel was deficient or that he was prejudiced.  At
> the evidentiary hearing, trial counsel testified that he did not obtain a
> contemporaneous photograph because it was obvious from appellant's
> appearance that he was not Hispanic.  Generally, the "[t]actical
> decisions [of counsel] are virtually unchallengeable absent
> extraordinary circumstances."  See Howard v. State, 106 Nev. 713,
> 722, 800 P.2d 175, 180 (1990), abrogated in part on other grounds by
> Harte v. State, 116 Nev. 1054, 1072, n.6, 13 P.3d 420, 432, n.6 (2000).
> Appellant fails to demonstrate any extraordinary circumstances here.
> In addition, given the other overwhelming evidence presented against
> appellant, appellant has failed to demonstrate a reasonable probability
> that the result of trial would have been different had trial counsel
> introduced a contemporaneous photograph.  Therefore, the district
> court did not err in denying this claim.

15

1   (Exhibit 133, at pp. 12-14).  The factual findings of the state court are presumed correct.  28 U.S.C.

2   § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

3   *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 12-14).  Counsel was not

4   ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

5   770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

6   Court's ruling was contrary to, or involved an unreasonable application of, clearly established

7   federal law, as determined by the United States Supreme Court, or that the ruling was based on an

8   unreasonable determination of the facts in light of the evidence presented in the state court

9   proceeding.  This Court denies habeas relief on Ground Four of the federal petition.

10          **E.  Ground Five**

11          Petitioner claims that trial counsel was ineffective for failing to impeach witness Patzig at the

12   preliminary hearing with prior inconsistent statements.  (ECF No. 7, at p. 11).  The Nevada Supreme

13   Court rejected this claim, ruling as follows:

14                  Appellant next argues that trial counsel was ineffective for failing to
                    cross-examine Patzig about his motives for testifying against
15                  appellant.  Specifically, appellant argues that trial counsel should have
                    cross-examined Patzig regarding a letter he wrote to the clerk of court
16                  in a previous case allegedly seeking benefits after he testified against a
                    jailhouse acquaintance.  Appellant also argues that trail counsel should
17                  have cross-examined Patzig regarding discrepancies in a February 28,
                    2001, interview with the police and his preliminary hearing testimony.
18                  Appellant fails to demonstrate that counsel was deficient or that he
                    was prejudiced.
19
                    At the preliminary hearing, counsel for appellant's co-defendant cross-
20                  examined Patzig first and established Patzig had previously testified
                    against another jailhouse acquaintance.  Accordingly, because Patzig's
21                  testimony was read to the jury, the jury was aware that Patzig had a
                    history of "turning informant."  Even so, it was also established that in
22                  this case, Patzig had not received any benefit in exchange for his
                    testimony, and did not expect to receive a benefit.  With respect to the
23                  discrepancies between Patzig's interview with the police and Patzig's
                    preliminary hearing testimony, trial counsel asked about at least some
24                  of those discrepancies during cross-examination, and Patzig indicated
                    that after his interview with the police, he continued to be cellmates
25                  with appellant and was able to obtain some additional information.
                    Given the other overwhelming evidence presented against appellant,
26

                                                    16

> including his girlfriend's testimony about the day of the murder,
> evidence that appellant possessed a fake bomb and handgun taken
> from the victim's home, evidence that appellant had recently begun
> carrying a box cutter consistent with the murder weapon, and a
> neighbor's eyewitness identification that she had seen appellant and
> two other men walking away from the victim's home on the day of the
> murder, appellant cannot demonstrate a reasonable probability of a
> different result had trial counsel cross-examined Patzig about the letter
> he wrote in the previous case.  Therefore, the district court did not err
> in denying this claim.

(Exhibit 133, at pp. 11-12) (footnotes omitted).  The factual findings of the state court are presumed

correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal

standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 11-12).  Counsel

was not ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___,

131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada

Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court, or that the ruling was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  This Court denies habeas relief on Ground Five of the federal petition.

### F.  Ground Six

Petitioner claims the following: "Trial counsel was ineffective for failing to object to

Hopkins [sic] in court identification of petitioner and he was also ineffective for failing to hire an

expert witness to explain to the jury the weakness of eyewitness identification."  (ECF No. 7, at p.

13).  The Nevada Supreme Court rejected these claims, as follows:

> Next, appellant argues that trial counsel was ineffective for failing to
> object to eyewitness Karyn Hopkins' identification of the defendant.
> Appellant further argues that trial counsel was ineffective for failing to
> object to an expert witness to testify about the reliability of eyewitness
> identifications.  Appellant failed to demonstrate that he was
> prejudiced.
>
> The applicable standard for pretrial identifications is whether,
> considering the totality of circumstances, "'the confrontation
> conducted in this case was so unnecessarily suggestive and conducive
> to irreparable harm mistaken identification that [appellant] was denied

17

1

2

due process of law.'" Jones v. State, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979) (alteration in original) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967)).

3

4

5

6

7

8

9

10

Here, Hopkins identified appellant at the preliminary hearing, where appellant was wearing a jailhouse jumpsuit, shackles, and was seated with his two co-defendants. Hopkins later identified appellant at trial. Based on the circumstances of the preliminary hearing, appellant argues that Hopkins' first identification of appellant was so unnecessarily suggestive that it rendered any later identifications by Hopkins to be unreliable. Appellant also argues that an expert witness was necessary to explain that Hopkins' identification was unreliable. Nonetheless, even if trial counsel had succeeded in challenging Hopkins' identification of appellant, or presented expert witness testimony regarding the reliability of appellant, given the other overwhelming evidence presented against appellant, including his own confession to Patzig, appellant fails to demonstrate a reasonable probability that the result of trial would have been different. Therefore, the district court did not err in denying this claim.

11   (Exhibit 133, at pp. 14-15). The factual findings of the state court are presumed correct. 28 U.S.C.

12   § 2254(e)(1). The Nevada Supreme Court cited to and applied the correct federal standard of

13   Strickland v. Washington, 466 U.S. 668 (1984). (Exhibit 133, at pp. 3, 14-15). Counsel was not

14   ineffective under the deferential Strickland standard. Harrington v. Richter, ___U.S. ___, 131 S.Ct.

15   770, 788 (2011). Petitioner has failed to meet his burden of proving that the Nevada Supreme

16   Court's ruling was contrary to, or involved an unreasonable application of, clearly established

17   federal law, as determined by the United States Supreme Court, or that the ruling was based on an

18   unreasonable determination of the facts in light of the evidence presented in the state court

19   proceeding. This Court denies habeas relief on Ground Six of the federal petition.

20   **G. Ground Seven**

21   Petitioner alleges that trial counsel was ineffective for failing to object to the triple hearsay

22   testimony presented by a police detective. (ECF No. 7, at p. 15). The Nevada Supreme Court

23   addressed this claim as follows:

24

25

26

Next, appellant argues that trial counsel was ineffective for failing to object to testimony by a police detective that he had been informed by county jail inmate David Delmult that he overheard a conversation between appellant and another inmate in which appellant indicated

1
2
3
4
5

> that he had hidden a gun in a Budget Crest Motel room.  Appellant
> failed to demonstrate that he was prejudiced.  The police detective's
> testimony regarding the out-of-court statement of Delmult was likely
> inadmissible hearsay.  <u>See</u> NRS 51.035.  Even so, the gun, and the fact
> that it had been discovered hidden in a motel room recently vacated by
> appellant, were properly admitted to the jury.  Therefore, given the
> other overwhelming evidence presented against appellant, appellant
> has failed to demonstrate reasonable probability of a different outcome
> had this statement been excluded.  Therefore, the district court did not
> err in denying this claim.

6
7
8
9
10

(Exhibit 133, at pp. 15-16).  The factual findings of the state court are presumed correct.  28 U.S.C.

§ 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

*Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 15-16).  Counsel was not

ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

11
12
13
14
15

770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

Court's ruling was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the United States Supreme Court, or that the ruling was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  This Court denies habeas relief on Ground Seven of the federal petition.

### H.  Ground Eight

16
17
18
19
20
21

Petitioner claims that trial counsel was ineffective for failing to review the redacted version

of his third statement to police before that statement was admitted into evidence.  Petitioner further

alleges that trial counsel was ineffective for failing to object to incorrect and prejudicial information

contained in the redacted version of his third statement to police.  (ECF No. 7, at p. 17).  The

Nevada Supreme Court considered and rejected these claims, as follows:

22
23
24
25
26

> Next, appellant argues that trial counsel was ineffective for failing to
> review appellant's redacted statement to the police before it was
> presented to the jury.  According to appellant, when police asked
> appellant what he planned to do with the stolen gun he claimed he
> obtained from his co-defendant, appellant replied "self-defense."
> However, the redacted and transcribed copy of the statement presented
> to the jury read "sell it."  Appellant failed to demonstrate that trial
> counsel was deficient or that [he was] prejudiced.  Trial counsel
> admitted at the evidentiary hearing that he had only reviewed

19

1
2
3
4

> appellant's complete statement, not the redacted version.  However,
> counsel pointed out the error in the transcript to the jury during closing
> arguments.  Thus, as the jury was aware of the error in the transcripts,
> appellant has failed to demonstrate a reasonable probability of a
> different outcome had trial counsel reviewed the redacted statement
> earlier.  Therefore, the district court did not err in denying this claim.

5

(Exhibit 133, at p. 16).  The factual findings of the state court are presumed correct.  28 U.S.C. §

6

2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

7

*Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 16).  Counsel was not

8

ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

9

770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

10

Court's ruling was contrary to, or involved an unreasonable application of, clearly established

11

federal law, as determined by the United States Supreme Court, or that the ruling was based on an

12

unreasonable determination of the facts in light of the evidence presented in the state court

13

proceeding.  This Court denies habeas relief on Ground Eight of the federal petition.

**I. Ground Nine**

14
15

Petitioner asserts that trial counsel was ineffective for failing to conduct cross examination of

16

the State's DNA expert.  (ECF No. 7, at p. 19).  The Nevada Supreme Court reviewed this claim and

17

held:

18
19
20
21
22

> [A]ppellant argues that trial counsel was ineffective for failing to
> cross-examine a DNA expert regarding strands of hair recovered from
> the victim's hands.  Appellant failed to demonstrate how counsel was
> deficient or that he was prejudiced.  As appellant admits in his
> briefing, the LVMPD never tested the DNA from those samples.
> Accordingly, any questioning regarding the strands of hair would have
> had very little probative value to either the State or the defense, and
> appellant has failed to demonstrate reasonable probability of a
> different result had trial counsel pursued this line of questioning.
> Therefore, the district court did not err in denying this claim.

23

(Exhibit 133, at pp. 16-17).  The factual findings of the state court are presumed correct.  28 U.S.C.

24

§ 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

25

*Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 16-17).  Counsel was not

26

1  ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

2  770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

3  Court's ruling was contrary to, or involved an unreasonable application of, clearly established

4  federal law, as determined by the United States Supreme Court, or that the ruling was based on an

5  unreasonable determination of the facts in light of the evidence presented in the state court

6  proceeding.  This Court denies habeas relief on Ground Nine of the federal petition.

7       **J.  Ground Ten**

8          Petitioner alleges that trial counsel was ineffective for: (1) failing to investigate potentially

9  mitigating evidence; (2) failing to challenge incriminating, untrustworthy, and inadmissible

10  evidence; and (3) failing to object to a fraudulent criminal history consisting of unsubstantiated and

11  unproven criminal charges with no supporting judgments of conviction.  (ECF No. 7, at p. 21).  The

12  Nevada Supreme Court reviewed and rejected each of petitioner's claims:

13          Appellant first claims that trial counsel was ineffective for failing to
            investigate and present mitigating evidence at the penalty hearing.

14          Appellant argues that he was "kidnapped" by his mother at the age of
            nine, and spent his youth in a children's home.  Appellant asserts that

15          counsel should have performed additional investigation into this aspect
            of his childhood, including obtaining DCFS records and interviewing

16          family members, and presented this information to the jury.  We
            conclude that appellant failed to demonstrate that he was prejudiced.

17          At the sentencing hearing, trial counsel elicited testimony regarding
            his abandonment by his mother, and his time in the children's home.

18          Accordingly, as the jury was aware of appellant's troubled childhood
            and appellant's family's good opinion of him, appellant fails to

19          demonstrate a reasonable probability that the result of the penalty
            hearing would have been different had counsel performed additional

20          investigation or presented additional evidence related to appellant's
            childhood.  Therefore, the district court did not err in denying the

21          claim.

22          Next, appellant claims that trial counsel was ineffective for failing to
            meet with him prior to the initially scheduled sentencing hearing.

23          Appellant fails to demonstrate that he was prejudiced.  At the initial
            hearing, trial counsel explained that he had been unable to meet with

24          appellant face to face, and the trial court continued the hearing to
            allow trial counsel the opportunity to do so.  Therefore, appellant fails

25          to demonstrate a reasonable probability of a different result had

26

21

1
2

counsel met with him earlier. Accordingly, the district court did not err in denying this claim.

3
4
5
6
7
8
9
10

Next, appellant argues that counsel was ineffective for failing to object to the presentation of certain evidence related to appellant's criminal history during the penalty phase. During the penalty hearing, an investigator for the State relied on a report from the National Crime Information Center (NCIC) to testify that appellant had numerous felony arrests and both felony and misdemeanor convictions. The presentence investigation report (PSI) compiled by the Department of Parole and Probation listed fewer actual arrests, charges, and convictions. Thus, appellant argues that because the PSI contained fewer arrests and charges, counsel should have objected to the presentation of information contained in the NCIC report as inaccurate. In addition, appellant argues that trial counsel should have objected to the presentation of appellant's entire criminal history through the NCIC report on grounds that the report was more prejudicial than probative. See Herman v. State, 122 Nev. 199, 209, 128 P.3d 469 (2006).

11
12
13
14

Appellant fails to demonstrate that he was prejudiced. Given the violent nature of the crime of which he was convicted, appellant has failed to demonstrate a reasonable probability that had the jury been presented with slightly fewer previous criminal charges, the jury would have agreed upon a lesser sentence than the sentence of life without the possibility of parole ultimately imposed by the district court. Therefore, the district court did not err in denying this claim.

15   Exhibit 113, at pp. 17-19 (footnotes omitted). The factual findings of the state court are presumed

16   correct. 28 U.S.C. § 2254(e)(1). The Nevada Supreme Court cited to and applied the correct federal

17   standard of *Strickland v. Washington*, 466 U.S. 668 (1984). (Exhibit 133, at pp. 3, 17-19). Counsel

18   was not ineffective under the deferential *Strickland* standard. *Harrington v. Richter*, ___U.S. ___,

19   131 S.Ct. 770, 788 (2011). Petitioner has failed to meet his burden of proving that the Nevada

20   Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

21   established federal law, as determined by the United States Supreme Court, or that the ruling was

22   based on an unreasonable determination of the facts in light of the evidence presented in the state

23   court proceeding. This Court denies habeas relief on Ground Ten of the federal petition.

24   / / / / / / / / /

25   / / / / / / / / /

26

**K.  Ground Eleven**

Petitioner asserts that the cumulative effect of the alleged errors violated his right to fair trial. (ECF No. 7, at p. 23).  To the extent that cumulative error may be grounds for federal habeas relief, the Ninth Circuit has announced that: "[T]he combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9ᵗʰ Cir. 2007).  This Court has reviewed the state court record and the pleadings filed by the parties.  Petitioner has not demonstrated that cumulative errors occurred, and even assuming errors did occur, that such errors resulted in a trial that was fundamentally unfair.

The Nevada Supreme Court rejected petitioner's claim of cumulative error, as follows:

> Finally, appellant argues that the cumulative effect of trial and appellate counsel's alleged errors indicates that he received ineffective assistance of counsel.  Given the overwhelming evidence presented against appellant, including his own confession to Patzig that he murdered the victim, the jury's verdict was not rendered unreliable by the cumulative nature of any of trial or appellate counsel's alleged errors.  Therefore, the district court did not err in denying this claim.

(Exhibit 133, at pp. 19-20).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 133, at pp. 3, 19-20).  Counsel was not ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  As such, this Court denies habeas relief with respect to Ground Eleven.

**IV.  Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9ᵗʰ Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

23

(9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this __12th__ day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE

24